UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:14-CV- 320 |
| v. ) | |
| ) | Judges _____ |
| $18,480.00 U.S. CURRENCY SEIZED FROM ) | |
| EL A. WILLIS ON FEBRUARY 10, 2014, ) | |
| ) | |
| Defendant. ) | |

## VERIFIED COMPLAINT *IN REM*

The plaintiff, United States of America, by and through its attorneys, William C. Killian, United States Attorney for the Eastern District of Tennessee, and Anne-Marie Svolto, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## NATURE OF THE ACTION

1. In this *in rem* civil action, the United States of America seeks forfeiture of $18,480.00 in U.S. currency (hereinafter "defendant property").

2. The United States of America seeks forfeiture of the defendant property pursuant to 21 U.S.C. § 881(a)(6), which authorizes forfeiture of all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

## THE DEFENDANT IN REM

3. The defendant property consists of $18,480.00.00 in U.S. currency, that was seized from El A. Willis by the Monroe County Sheriff's Office incident to a traffic stop on Interstate 75 in Monroe County, Tennessee on February 10, 2014.

4. Custody of the defendant property was transferred to the United States Marshals Service. The defendant property is currently on deposit in an account under the control of the United States Marshals Service.

## JURISDICTION AND VENUE

5. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b)(1)(A). Upon the filing of this complaint, the plaintiff requests that the Clerk issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i). The plaintiff will then execute the warrant upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(b), because the property is located in this district.

## BASIS FOR FORFEITURE

8. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled

substance or listed chemical in violation of the Controlled Substances Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## FACTS

9. As set forth in detail in the Affidavit of Drug Enforcement Administration Special Agent Gregory C. Monroe attached hereto, the Government's investigation has determined that the defendant property was proceeds of drug-related violations of 21 U.S.C. §§ 841 and/or 846.

10. The defendant property is subject to forfeiture to the United States in accordance with 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 10 above.

The defendant property constitutes money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, and is subject to forfeiture to the United States in accordance with 21 U.S.C. § 881(a)(6). In addition, the defendant property constitutes property intended to be used, in any manner or part, to commit or to facilitate the commission of a violation 21 U.S.C. §§ 841 and/or 846 and is subject to forfeiture to the United States in accordance with 21 U.S.C. § 853.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that the Clerk issue a Warrant for Arrest *In Rem* for the defendant property and that the defendant property be condemned and forfeited to the United States of America in accordance with the provisions of law; that notice of

3

this action be given to all persons known or thought to have an interest in or right against the defendant property; and that the plaintiff be awarded its costs in this action and for such other necessary and equitable relief as this Court deems proper.

                WILLIAM C. KILLIAN
                United States Attorney

By: *s/Anne-Marie Svolto*
     Anne-Marie Svolto
     Assistant United States Attorney
     800 Market Street, Suite 211
     Knoxville, Tennessee 37902
     (865) 545-4167

## VERIFICATION

I, Gregory C. Monroe, Task Force Officer with the Drug Enforcement Administration, hereby verify and declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint *In Rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are from information gathered by law enforcement officers, as well as my investigation of this case with the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of July, 2014.

Gregory C. Monroe
Task Force Officer
Drug Enforcement Administration

5

# AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT *IN REM*

## BACKGROUND

I, Gregory C. Monroe, being duly sworn, depose and state as follows:

1. I am an "investigative or law enforcement officer" of the United States within the meaning of 18, U.S.C. § 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18, U.S.C. § 2516(1).

2. I have been a Special Agent (SA) with the Tennessee Bureau of Investigation (TBI) since 1984. From approximately 1990-1995, I was assigned to two Federal Drug Task Forces under the supervision of the Federal Bureau of Investigation (FBI) and United States Drug Enforcement Administration (DEA) for a total period of approximately four (4) years. I am presently assigned to the DEA's Tennessee Appalachia High Intensity Drug Trafficking Area (HIDTA) Task Force as a Task Force Officer (TFO) and have been so assigned since 1998. I have participated in numerous investigations of narcotics violations and money laundering. I have conducted narcotics and money laundering investigations using complex investigative techniques and analytical methods. I have experience and training in the debriefing of confidential sources about drug trafficking, in the surveillance of persons involved in drug trafficking, and in conducting searches for controlled substances and records of drug activity. I am familiar with the methods of operation and terminology used by drug traffickers, as well as, methods of laundering drug trafficking proceeds. I have participated in several investigations in which court-authorized wire interceptions were used. In 2006 through 2007, I was involved in a federal cocaine investigation where I was the affiant for court-authorized wire interceptions. On January 11, 2013, I completed a Tennessee wiretap course conducted by the TBI.

3. This affidavit supports the civil forfeiture of $18,840.00 in United States currency, seized from El A. Willis by the Monroe County Sheriff's Office incident to a traffic stop on Interstate 75 in Monroe County, Tennessee on February 10, 2014.

4. The facts provided in this affidavit are based in part on information provided by other law enforcement agencies; on business records; on information gained through government and open-source searches; on other information noted herein, and on my experience and background as a DEA TFO.

## BACKGROUND OF THE INVESTIGATION

5. On February 10, 2014, at approximately 3:03 PM, Monroe County Sheriff's Detective Bobby Queen conducted a traffic stop of a black Chevrolet Sedan traveling southbound on I-75 in Monroe County, Tennessee. Detective Queen had witnessed the vehicle make a lane change without executing a turn signal, a moving vehicle violation. Upon approaching the vehicle, the driver, Shonta WILSON, informed Det. Queen that she (WILSON) was driving on a suspended driver's license. The passenger, El WILLIS, produced a valid Tennessee driver's license. WILLIS informed Detective Queen that WILLIS had rented the vehicle.

6. Detective Queen asked WILSON to exit the vehicle to retrieve information for a driver's license check . WILSON stated that she and WILLIS were traveling to Chattanooga to visit WILLIS' uncle. Detective Queen noted that the rental agreement for the vehicle had permission for travel in Tennessee and Georgia, and asked WILSON if they were traveling to Georgia. WILSON replied, that they were not traveling to Georgia. WILSON further explained that she and WILLIS had rented the vehicle for an extended period of time

2

because their primary vehicle needed repairs. She further stated that she was employed by McDonald's Restaurant, and that WILLIS was unemployed. Det. Queen then approached WILLIS and asked him where they were going. WILLIS stated that they were traveling to Atlanta, Georgia, for pleasure. WILLIS confirmed that he was unemployed (on disability), and stated that WILSON was his girlfriend.

7. Det. Queen then contacted Blue Lightning Operations Center and provided them with information concerning the traffic stop. Det. Queen received a return call from Blue Lightning Operations Center advising that both subjects had a criminal history, and that WILLIS had drug, assault, and burglary charges on his record. Det. Queen also received confirmation that WILSON's driver's license was indeed suspended. Det. Queen then requested that WILLIS exit the vehicle so that Det. Queen could conduct a weapon's check for safety purposes.

8. Det. Queen conducted a pat - down search and felt a large object in front of WILLIS' pants, and partially under his shirt and jacket. Det. Queen pulled WILLIS' shirt up, and saw a large locking currency bag which appeared to be full of something, shoved down into the front of WILLIS' pants. Det. Queen removed the bag and asked WILLIS what it contained. WILLIS replied that it contained money. Det. Queen asked WILLIS for the key to the locked money bag. WILLIS replied that it was on the key ring to the car. Det. Queen retrieved the key and opened the money bag, and found that it contained several rubber banded bundles of United States Currency. Det. Queen asked WILLIS how much money was in the bag; WILLIS first replied $18,000.00 but then amended that to $18,450.00.

9. Det. Queen also noted the strong odor of raw marijuana emanating from the money bag. Detective Queen also later found marijuana residue on the front seats and driver's side floor area of the vehicle. WILLIS explained his possession of the money by saying that he

was a music producer, and was traveling with the money to Atlanta, Georgia for the purpose of conducting some music deals. Det. Queen questioned WILSON concerning the money. WILSON claimed to have no knowledge of the money and indicated that she was even unaware they were traveling to Atlanta, Georgia.

10. Det. Queen then questioned WILLIS further concerning his possession of the money. WILLIS' explanations were inconsistent and difficult to discern. Det. Queen then advised WILLIS that he was seizing the currency as proceeds of illegal drug sales. Det. Queen contacted DEA who advised having a K-9 conduct a drug sniff of the vehicle. Det. Queen called K-9 Sergeant James "BJ" Johnson who later arrived and directed his K-9 to conduct the drug sniff of the exterior of the vehicle, which resulted in a positive reaction to the presence of the odor of drugs at the bottom seam of the driver's side door. Det. Queen advised Mr. WILLIS he was moving the investigation to Det. Queen's office at Monroe County Sheriff's Department in Madisonville, Tennessee. Sergeant Walker transported WILSON to Monroe County Sheriff's Department, as Det. Queen intended charging her with Driving without a valid Driver's License; WILLIS followed in the rental vehicle. At Monroe County Sheriff's Department, Det. Queen attempted to conduct separate taped interviews of WILLIS and WILSON. WILLIS became upset when Det. Queen asked him detailed questions concerning his alleged music business, and soon refused to answer any questions about it. WILSON initially claimed during the taped interview that half of the currency belonged to her, but later recanted that testimony after the taped portion of the interview was concluded, when WILLIS became angry with her for making that statement.

11. Det. Queen obtained three envelopes and placed the money bag into one envelope, then placed paper towels in two other envelopes and numbered them, with the

4

envelope containing the money bag being #3. He then requested that Monroe County Sheriff's K-9 officer James "BJ" Johnson direct his K-9 to conduct a drug sniff of the three envelopes. Once the activity was complete, Officer Johnson advised Detective Queen that the K-9 had exhibited a positive reaction indicating the presence of drugs on bag#3, and showed no reaction to bags #1 and #2. The K-9 is a Dutch Shepherd named VIGOR, and is approximately 7 years of age. VIGOR's first Certification as a Level 1 Full Patrol Dog was on November 18, 2008. Officer Johnson first used him on or about February 5, 2009. Officer Johnson has maintained a log of VIGOR's activity since 2009. VIGOR was last certified as a Level 1 Full Patrol Dog on September 17, 2013. That certification is good for a full year. VIGOR is trained as a "Full Patrol" dog, meaning he is trained for tracking, apprehension, and drugs. He is trained to detect Marijuana, Cocaine, Heroin, and Methamphetamine. VIGOR has been relied upon successfully in numerous narcotics cases.

12. Det. Queen then contacted the Tennessee Meth Task Force and requested an ion swab test be conducted on the vehicle occupied by WILLIS and WILSON. During the course of processing evidence, and other activity related to this investigation, the ion swabs were misplaced. On February 28, 2014, TFO Monroe witnessed Det. Queen and other officers with the Monroe County Sheriff's Office conduct a second ion swab test on the money bag. On March 25, 2014, Det. Queen provided TFO Monroe with the results of an ION test, which indicated a positive detection of cocaine.

13. Det. Queen later determined that the exact total of the currency was $18,480.00, which was secured and deposited in a safe location until completion of the case and associated proceedings.

5

## CONCLUSION

14. This affidavit establishes that the defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

_____
Gregory C. Monroe
Task Force Officer, Drug Enforcement Administration

STATE OF TENNESSEE

COUNTY OF KNOX

On this __1st__ day of July, 2014, before me, personally appeared Gregory C. Monroe in his capacity as a Task Force Officer with the Drug Enforcement Administration, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF I have hereunto set my hand and Notarial Seal.

Subscribed to and sworn before me on this __1st__ day of July, 2014.

_____
NOTARY PUBLIC
Jeanette E. Sorey

My Commission Expires: __1/5/2015__

[Notary Seal: JEANETTE E. SOREY, STATE OF TENNESSEE NOTARY PUBLIC, KNOX COUNTY]